# Com. ex rel. Todd, Attorney General, *v.* Bank of Pittsburgh, Pa.

*Banks and banking—Loans—Collateral security—Joint pledge—Purpose of pledge—One pledgor's power to bind co-pledgors—Payment of note—Pledgor's right to return of collateral.*

Three persons each owning certain shares of stock, pledged their stock certificates with a trust company as security for the payment of a promissory note. The loan for which the note was given was made jointly to the pledgors, but the note was made by one of the pledgors only, and contained a statement that the maker had "deposited herewith as collateral security for payment of this or any other liability or liabilities of mine to the holder hereof" the shares described. The loan was reduced by payments made by the three pledgors in equal proportions, and was subsequently taken over by a bank together with the collateral. Thereafter the bank was placed in the hands of a receiver who sought to hold the stock certificates as collateral security for other liabilities of the maker of the note in addition to the debt for which they had been originally pledged. It did not appear that either of the other pledgors had authorized the maker of the note to stipulate that their certificates should be held for other liabilities of the maker of the note, but it did appear that the trust company and the bank knew of the ownership of the certificates and the terms of their

520   COM. ex rel. TODD, *v.* BANK OF PITTSBURGH, PA.

Syllabus—Arguments.                    [246 Pa.

deposit. *Held,* the lower court erred in discharging a rule to show cause why the receiver should not be directed to surrender the collateral of one of the pledgors other than the maker of the note upon payment thereof.

Argued May 21, 1914. Appeal, No. 7, May T., 1914, by William C. Hagan, from order of C. P. Dauphin Co., Commonwealth Docket, 1908, No. 23, refusing to direct a receiver to surrender certain securities to petitioner in case of Commonwealth of Pennsylvania ex rel. M. Hampton Todd, Attorney General, v. Traders & Mechanics Bank of Pittsburgh, Pa. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Proceedings upon the suggestion of the attorney general to wind up the business of a bank.

Rule to show cause why a receiver should not be ordered to deliver certain securities to petitioner. Before McCARRELL, J.

The opinion of the Supreme Court states the facts.

The court discharged the rule. Petitioners appealed.

*Error assigned* was the order of the court.

*Benj. C. Tunison,* with him *Walter Lyon,* for appellant.—The trust company and the bank had knowledge that petitioner owned the stock: Houseman v. Girard Mutual Bldg. Assn., 81 Pa. 256; Danville Bridge Company v. Pomroy, 15 Pa. 151; Hood v. Fahnestock, 8 Watts 489; Boggs v. Lancaster Bank, 7 W. & S. 331; Kersey Oil & Mineral Company v. Oil Creek & A. R. Co., 5 W. N. C. 144; First National Bank of Bethlehem v. Peisert, 2 Penny. 277.

The stock was deposited by petitioner as security for the joint loan of $8,000, and for no other purpose and cannot be applied for purposes other than those for which it was pledged: Smuller v. Union Canal Company, 37 Pa. 68; James' Appeal, 89 Pa. 54; Selden v.

COM. ex rel. TODD, v. BANK OF PITTSBURGH, PA. 521

1914.]          Arguments—Opinion of the Court.

Bank, 69 Pa. 424; Buckley v. Garrett, 60 Pa. 333; Campbell v. McClenachan, 6 S. & R. 171; Oliver v. Oliver, 4 Rawle 141; Chalfant v. Williams, 35 Pa. 212; Powelton Coal Co. v. McShain, 75 Pa. 238; Shugart v. Moore, 78 Pa. 469; Caley v. Philadelphia & C. C. R. Co., 80 Pa. 363; Greenawalt v. Kohne, 85 Pa. 191; Martin v. Fridenberg, 169 Pa. 447; Spencer v. Colt, 89 Pa. 314; Juniata Bldg. Ass'n v. Hetzel, 103 Pa. 507; Thomas v. Loose, 114 Pa. 35; Cullmans v. Lindsay, 114 Pa. 166; Westinghouse v. German National Bank, 188 Pa. 630; Petrie v. Clark, 11 S. & R. 377; 22 A. & E. Encyc. 848-9; Altoona Second National Bank v. Dunn, 151 Pa. 228 (25 Atl. Repr. 80); Davis v. Funk, 39 Pa. 243; McKinney v. Crawford, 8 S. & R. 351; Chestnut Street National Bank v. Ellis, 161 Pa. 241.

*L. M. Shoemaker,* with him *Clarence Burleigh* and *William A. Challener,* for appellee, cited: Olcon v. Rosenbloom, 55 Pa. Superior Ct. 1.

OPINION BY MR. JUSTICE POTTER, October 5, 1914:

In this proceeding a rule was taken upon the receiver of the Traders and Mechanics Bank of Pittsburgh, to show cause why he should not be directed to surrender to their owner, William C. Hagan, certain securities, upon the payment to the receiver, of the note, to secure which, the collateral had been deposited by the petitioner. It appears from the record and from the history of the case, that on May 21, 1906, the petitioner owned thirty-seven shares of the preferred stock of the Standard Ice Company, and the same number of shares of the common stock of the same company. Mr. Francis J. Torrance was also the owner of the same number of shares, and Charles A. Muehlbronner was the owner of thirty-eight shares each, of the common and preferred stock in said company. Certificates for the stock owned by each of them was issued to each of the said parties. Previous to the said date, the said certificates of stock

522   COM. ex rel. TODD, *v.* BANK OF PITTSBURGH, PA.

Opinion of the Court.                    [246 Pa.

had been by the said parties deposited as collateral security for a joint loan, with the Provident Trust Company of Allegheny, upon which loan there was due on said date by the said parties, the sum of $8,000. Payment of this loan was required by the Provident Trust Company. After certain negotiations the loan was transferred to the Treasury Trust Company, and the certificates were transferred in blank and deposited with the Treasury Trust Company. The loan was made to the three parties jointly, but at the suggestion of the president of the trust company, the note for the sum borrowed was signed by Mr. Muehlbronner alone. This note has since been reduced to the sum of $3,465. All of the payments made on account of said note, as well as the interest thereon, were paid by petitioner, and Mr. Torrance and Mr. Muehlbronner in equal proportions. Of this fact it appears that the trust company had full knowledge. The loan was subsequently taken over by the Traders and Mechanics Bank, which was owned and controlled by the Treasury Trust Company. On February 4, 1908, a receiver was appointed for the Traders and Mechanics Bank, who took into his possession the note in question, together with the certificates of stock above referred to. The petitioner made demand for an equitable adjustment of his rights in the premises and for the delivery to him of his certificates of stock. This was refused by the receiver, under the claim that the certificates of stock owned by the petitioner were liable not merely as security for the payment of the note in question, but were also held to secure the payment of any other liability of Muehlbronner to the bank, and that Muehlbronner was in fact liable to the receiver as an endorser on other notes, to a considerable amount. This claim of the receiver, is based upon the language of the collateral note, which contained the statement usual in such form of note, that the maker had "deposited herewith as collateral security for payment of this or any other liability or liabilities of the mine to the holder

COM. ex rel. TODD, *v.* BANK OF PITTSBURGH, PA. 523

1914.]                    Opinion of the Court.

hereof," the shares described. The note was signed by Muehlbronner alone, but admittedly the indebtedness was joint, being that of himself and Torrance and the petitioner, Hagan. Nor is it questioned, that under the agreement the collateral of all three parties was deposited to secure their joint indebtedness, which, however, appeared upon the note in the name of Muehlbronner alone. That the trust company had full knowledge of the fact that the certificates in question were deposited for this purpose is not disputed. Undoubtedly Muehlbronner could stipulate that his own certificates which were thus deposited, should be held as security for any other indebtedness of his own. But where does it appear that he had any authority to stipulate that the certificates of his associates should be held for that purpose? We have looked through the record in vain, to find any such authority. It nowhere appears that Hagan agreed that his certificates should be used as collateral security for the payment of anything else than his own indebtedness. The case presented is not that of certificates bearing a general endorsement without limitations, under which the lender without knowledge of the real ownership, may assume full authority in the holder to pledge them for his own purpose. On the contrary it appears that these certificates were not even committed to the custody of Muehlbronner, and were not deposited by him with the trust company. They were deposited by the petitioner, with the trust company, which knew the fact of his ownership, and agreed with him that the certificates were to be used as specific security for the note in question, and it does not appear that the owner of the certificates ever consented to their use for any other purpose, or to secure other personal indebtedness of Muehlbronner. The collateral deposited by its owner for one specific purpose, could not without the consent of the owner be diverted to another purpose. In so far as the record shows the only understanding or agreement even with Muehlbronner that the certificates in question

524   COM. ex rel. TODD, *v.* BANK OF PITTSBURGH, PA.

Opinion of the Court.                    [246 Pa.

should be used as security for other personal indebtedness of his own to the trust company or the bank, was based entirely upon the clause to that effect, which was inserted in the collateral note; and there is no evidence tending to show that the presence of this clause in the note was in any way brought to the notice of the maker, or its effect discussed, at the time of its execution. True it is, that it was there, and the maker must be presumed to have read the note, and to have been familiar with the language of the instrument which he was signing. He cannot escape the consequences of his own act, in so far as his own property is concerned; but when it comes to subjecting to liability for the payment of his own personal indebtedness, that which the trust company at the time knew to be the property of another, authority for his act must be shown. We can find nothing in the record to sustain the assertion of any such right. The evidence clearly shows that when the loan was made, the trust company had knowledge that the real ownership of the certificates in question was in the petitioner. It also appears that the Traders and Mechanics Bank through its officers had knowledge of the ownership of the certificates and of the terms of their deposit as collateral, before taking them over from the trust company, and that it therefore stands in the same relation thereto as the original bailee.

The judgment of the court below is reversed. The rule upon the receiver, to show cause why he should not be directed to surrender the collateral of petitioner upon payment of the note, to secure which, it was deposited as collateral, is made absolute.